**UNITED STATED DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

DVORA WEINSTEIN

                           Plaintiff,

                                                        **Civil Action No.:**

                                                        **1:16-CV- 2661**

-against-

                                                              **COMPLAINT**

CARDIS ENTERPRISES INTERNATIONAL, N.V.,       *Jury Trial is Demanded*
CARDIS ENTERPRISES INTERNATIONAL (U.S.A.),
CHOSHEN ISRAEL GROUP, LLC
AARON DAVID FISCHMAN
AVI TOKAYER
STEVE BROWN, and
LAWRENCE KATZ

                            Defendants.

-----------------------------------------------------------------------X

       Plaintiff DVORA WEINSTEIN, by and through her undersigned counsel, providing upon information and belief, the following Complaint and state and allege as follows:

**SUMMARY**

       1.     This is a civil action seeking compensatory injunctive relief; damages; punitive damages; and costs and fees for securities fraud, common law fraud, fraud in the inducement, equitable fraud, conversion, unjust enrichment, and breach of fiduciary duties committed by Defendants.

       2.     Specifically, Plaintiff allege upon information and belief, that Defendants intentionally and knowingly sought to and did engage in a fraudulent securities sale scheme.

1

3.     Moreover, this securities fraud scheme was predatory in that Defendants sought out potential investors based on their ethnic and religious background in order to lessen the risk associated with said fraud.

4.     Defendants deceptive conduct characterizes the deceptive conduct which the Securities Exchange Act of 1934 (hereinafter the "Exchange Act") and the rules promulgated thereunder by the Securities and Exchange Commission (hereinafter the "SEC") sought to prevent.

5.     In direct connection with this calculated fraudulent scheme, the Individual Defendants made knowingly false and misleading material statements of fact.  Additionally, the Individual Defendants further omitted to state material facts which were detrimental to any true statement made, thereby cherry picking favorable statements and only stating half-truths.  Such intentional statements and omissions are actionable under the Exchange Act and SEC rules promulgated thereunder.

6.     Part and parcel with this fraudulent and deceptive scheme, Defendants converted, for their own benefit, monies provided by Plaintiff as well as other purchasers of securities in Cardis International, N.V. (hereinafter "Cardis"), a foreign corporation, incorporated in Amsterdam Netherlands but headquartered locally.

7.     Cardis operated in the United States under Cardis Enterprises International (U.S.A.), Inc.  However, it is upon information and belief from statements made by Cardis Officers, including the Individual Defendants, that there is absolutely no distinction between Cardis and Cardis Enterprises International (U.S.A.), Inc.

8.      In late 2011, Plaintiff was approached by another investor in Cardis whereupon Plaintiff was introduced to Aaron David Fischman, who was the prospector at the time of the introduction and is now president of Cardis.

9.      Fischman held Cardis out to be a technology company which had created and franchising software which offered a new low-cost solution the processing of low-value credit cards by vendors.

10.     A prospectus was given to Plaintiff which contained intentional and material misstatements of fact.  Said prospectus was misleading and false as to the software readiness, actual market value and proliferation of the technology offered by Cardis.

11.     Defendants represented that they had a ready-to-market software and readily eager purchasers of the product.  Defendants further provided documentation supporting this falsehood which was created in-house, but appeared to be from third-parties.

12.     Plaintiff, solely relying upon Defendants material misrepresentations, invested approximately $300,000 to Chosen International LLC, for the directed purpose of investing in Cardis.

13.     Defendants, in additional efforts to continue the fraud, distributed material misrepresentative statements and so-called "press releases."  These releases spoke to actual and pending transactions between the Defendants and others as well as to returns other investors had received.

14.     Upon information and belief, Cardis still does not have a ready-to-market software nor any actual purchasers of the product.

15.     Defendants induced Plaintiff to invest in Carids when Defendants' knew that the information disseminated about Cardis was false and/or wildly embellished.

3

16.     Plaintiff was issued a total of 789,417 shares of Cardis stock.

17.     Upon information and belief, Defendants have significantly played with the valuation of Cardis.  For example, Defendants, who are still on a "Road-Show" for Cardis, have issued stock in the amount of 690,750 for a mere $150,000.  Furthermore, it is upon information and belief that shares for Cardis are again being re-priced for a mere15 cents a share.

18.     Plaintiff do not have the net worth, income, experience or sophistication to qualify as "accredited" or "sophisticated" investors.

19.     Upon information and belief, the entirety of Plaintiff investment has gone solely to enrich the Individual Defendants.

20.     Upon information and belief, the value of Plaintiff's shares is **$0**.

21.     Upon information and belief, Defendants have raised approximately **seventy million dollars ($70,000,000)** over a period of time from individual investors, based on the fraudulent scheme.

22.     Defendants violated Federal law as stated by the Exchange Act and rule promulgated by the SEC thereunder, as well as applicable State law by the Defendants fraud, conversion, unjust enrichment and breach of fiduciary duties.

23.     Unless enjoined, each individual defendant is likely to commit such violations in the future. Each defendant should be permanently enjoined from doing so, ordered to disgorge any ill-gotten gains or benefits derived as a result of their violations (whether realized, unrealized or received), and prejudgment interest thereon.  In addition, each individual defendant should be prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 (15 U.S.C. § 78l) or that is required to file reports pursuant to Exchange Act Section 15(d) (15 U.S.C. § 78o(d)).

## JURISDICTION AND VENUE

24.     Plaintiff bring this claim pursuant to Sections 10(b) and 20(a) of the Exchange, (15 U.S.C. §§ 78j(b) and 78t(a)); Rule 10b-5 promulgated thereunder by the SEC, (17 C.F.R. § 240.10b-5); as well as the laws of the State of New York.

25.     This Court hold jurisdiction over this matter pursuant to Section 27 of the Exchange Act, (15 U.S.C. §78aa), and the supplemental jurisdiction of this Court.

26.     This Court has subject matter Jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act of 1933, (15 U.S.C. §§ 77v(a)).

27.     Venue is proper pursuant to Securities Act of 1933 Section 22(a) (15 U.S.C. § 77v(a)) and Exchange Act Section 27 (15 U.S.C. § 78aa and 28 U.S.C. §1391(b)).  A substantial amount of the acts, practices and courses of conduct alleged herein which constitute violations of the Exchange Act occurred within the Eastern District of New York, including, but not limited to, transactions in common stock which were executed through and by the Defendants doing business within this district.

28.     In connection with the acts alleged herein, Defendandats, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices and courses of conduct alleged herein.

29.     This action is brought within the relevant statute of limitations period.  This action is timely as Plaintiff discovered the fraud in February of 2016.

## PARTIES

30.     Plaintiff DVORA WEINSTEIN, is an individual residing in the State of New York and owner of record of a substantial number of shares of Cardis Stock.

31.     Plaintiff DVORA WEINSTEIN is hereinafter referred to as "Plaintiff."

32.     Upon information and belief, Defendant CARDIS INTERNATIONAL, N.V. ("Cardis") is a foreign limited liability corporation, organized under the laws of Curacao with its place of business located at Prins Bernahardplein 200, Amsterdam, 1097 JB, Netherlands.

33.     Upon information and belief, Defendanshart CARDIS ENTERPRISES INTERNATIONAL (U.S.A.), INC. ("CARDIS USA") is a Delaware corporation, registered to do business in the State of New York with its principal place of business located at 445 Central Avenue, Cederhurst, New York 11516.  Upon further information and belief, Cardis USA is a Wholly owns subsidiary and actual primary place of business of Cardis.

34.     Upon information and belief, Defendant CHOSHEN ISRAEL GROUP, LLC ("Choshen") is a limited liability company duly organized and existing under the laws of the State of New York, with its principal place of business located at 445 Central Avenue, Cederhurst, New York 11516.  Aaron Fischman is the CEO of Cardis USA, Co-founder and supervisory Board Director of Cardis, and Choshen's managing partner.

35.     Upon information and belief, AARON DAVID FISCHMAN ("Fischman") is an individual residing in the State of New York.  Fischman is the CEO of Cardis USA; co-founder and Supervisory Board Director of Cardis; and managing partner of Choshen.  Fischman has acted in various officer positions since the inception of Cardis.  Fischman uses Choshen to raise money for Cardis.  Current FINRA Brokercheck reports indicate that Fischman was censured in 1995 and was barred from associating with any FINRA member as a result of Market

Surveillance Committee Complaint No. CMS940104.  Fischman has been barred from association with any National Association of Securities Dealers ("NASD") member in **any** capacity.

36.     Upon information and belief, Defendant AVI TOKAYER ("Tokayer") is an individual residing in Ranan'a, Israel.  Tokayer is a co-founder of Cardis and services its Supervisory Board.  Tokayer was censured by FINRA along with Fischman in 1995 and in a separate decision has been barred from association with any NASD member in **any** capacity.

37.     Upon information and belief, Defendant STEVE BROWN ("Brown") is an individual residing in the State of New York.  Brown is the Senior Vice President – Fianance of Cardis USA.

38.     Upon information and belief, Defendant LAWRENCE KATZ ("KATZ") is an individual residing in the State of New York.  Katz functions as in-house counsel for Chosen and Cardis USA.  Katz further is authorized to accept consideration for Cardis Stock from investors.

39.     Defendants identified in paragraphs 32-38 are collectively refereed to hereafter as "Defendants."

40.     Defendants identified in paragraphs 35-38 are collectively referred to hereafter as the "Individual Defendants."

## STATEMENT OF FACT

41.     Plaintiff bring this action due to injuries suffered as a direct result of Defendants breach of fiduciary duties, abuse of control, gross mismanagement, negligence, and fraud alleged herein.

42.     Plaintiff are investors and holders of Cardis stock at all time relevant to Defendants wrongful and fraudulent conduct.

**CARDIS: A Brief History**

43.     In 1998, Cardis was incorporated, as were two of its wholly owned subsidiaries, Cardis Enterprises International B.V. in the Netherlands and Cardis R&D Ltd. in Israel.

44.     Cardis was co-founded by Fischmen and Tokayer.

45.     Cardis operates in the United States as Cardis USA.  According to statements by Cardis Officers themselves, Cardis and its locally incorporated affiliates operate without distinction and are, in actuality, one and the same.

46.     Cardis claims to provide a unique solution for processing low-value credit card payments with advertised "game changing" cost efficiency.  Through apparent patented aggregation technology, Cardis seeks to align the interest of banks, payment schemes and retiles in driving the global move to cashless payments with significant economic benefits to businesses by reducing the fees associated with low value payments ("LVP").

47.     Carids and its Officers have repeatedly and regularly stated that the goal and direction of the company is to secure wide adoption of their patented technology; to become a global standard for processing LVPs in physical retail and m/e-commerce; and to bring the company public via an Initial Public Offering ("IPO").

48.     Cardis claimed to be able to reach IPO status by 2013.

49.     Cardis is funded by and through Choshen, which is owned and operated by Fischman and Tokayer.  Choshen raises capital for Cardis via a multitude of investment instruments, including but not limited to debt, equity, and private placement.

50.     To date, for the past eighteen (18) years, none of Cardies goals have been realized.

51.     The Individual Defendants, as a result of their respective positions within the Corporate Defendant structure, as directors and officers, possessed the power and authority to control the content of private placement offerings of Cardis, including their private placement memoranda, internal accounting procedures, and representation made by their agents when securities were sold to the Plaintiff within New York State.

52.     The Individual Defendants, knowingly, or should have known, about the proliferated false and materially misleading information contained in the corporate Defendants public releases.

53.      The Individual Defendants, knowingly, or should have known, about the materially false and misleading information which was being disseminated to investors and potential investors regarding the viability and productivity of the corporate Defendant.

**Defendants Fraudulent Scheme**

54.     From 2010 to the present day, Cardis, by and through its Officers and agents, engaged in multiple private placement offerings as a means of financing the company's business endeavors.

55.     Upon information and belief, Defendants specifically targeted members of the Orthodox Jewish Community for investing.  This predatory practice was due to the known nature of the community to trust its own members and the known and believed hesistancy for members of the community to bring legal action against one another

56.     In May of 2011, Plaintiff were approached by an individual investor (Mr. Begun) who discussed current and past investments with Plaintiff.  Plaintiff were told about Cardis and were offered a chance to have an in-depth discussion with Fischman regarding Cardis.

57.     Plaintiff Dvora Weinstein met with Fischman at the Cardis USA and Choshen headquarters in Cederhurst, New York, and were given a general view of Cardis' business model and projected future growth.

58.     Fischman provided documentation which projected wide-spread proliferation of Cardis technology on a global scale by 2012 and taking the company public via IPO by 2013.

59.     At this point, Fischman and Katz offered Plaintiff Dvora Weinstein a valuation of 50 cents per-share.

60.     Fischman further stated that Cardis was **not taking any more investors and did not need any more funds**.  However, because a fellow investor had brought Plaintiff Dvora Weinstein to the table, Fischman would make a generous exception.

61.     To further induce Plaintiff investment, Fischman, via his secretary, sent multiple documents to Plaintiff for review.

62.     One such document was entitled "Introduction to Cardis" dated March 2010. This thirteen (13) page document explains Cardis' goals and states that the core features of the Cardis Transaction aggregation solution are covered under US patents, with worldwide equivalents.

63.     It is upon information and belief, said patents are **useless from a business perspective and have either expired or are pending expiration**.

64.     Moreover, a four (4) page Letter of Intent was sent regarding an apparent agreement between Raiffeisen Bank International AG ("RBI") and Cardis.  RBI is one of the leading banking groups in Austria and Central and Eastern Europe.

65.     Of note, said Letter of Intent is dated February 8, 2011, and makes specific mentioned of time sensitive events.  Yet on each of the four pages, August 2, 2011 is written on the bottom with the initials of both signatures next to this other date.

66.     Additionally, when asked for a follow-up to the Letter of Intent, Plaintiff Dvora Weinstein was sent an unexecuted and undated "agreement" between RBI and Cardis.

67.     Upon information and belief, there was no actual or realized partnership between RBI and Cardis.  Moreover, aside from a subsequent press-release, there is no affiliation between Cardis and RBI.  The apparent deal which purported to effect approximately 15 million cardholders simply disappeared.

68.     The third document was tendered to Plaintiff Dvora Weinstein to further push Plaintiff Dvora Weinstein into investment.  This was a document purporting a Memorandum of Understanding ("MoU") between Cardis and Visa Europe dated August 30, 2010.

69.     Upon information and belief, the MoU resulted in absolutely **nothing**.

70.      On May 12, 2011, Plaintiff Dvora Weinstein was sent a subscription agreement which was intentionally left black for her to fill in the amount Plaintiff Dvora Weinstein wished to purchase.

71.     After multiple phone calls and other communications, Plaintiff Dvora Weinstein was convinced to invest in Cardis.

72.     In June and September of 2011 Plaintiff invested a total $300,000 as consideration for Cardis common stock via Choshen, giving the check to Katz.

73.     Initially, Plaintiff were paying 50 cents per share, however, for an unknown and unintelligible reason, after Defendants obtained the checks from Plaintiff, Fischman re-priced Plaintiff shares at 38 cents a share.

74.     It is upon information and belief that this was done in order to blind Plaintiff to the truth of the fraud.

75.     At the time of Plaintiff's investment, Plaintiff was assured by Fischman that there were only 400 million shares of stock in Cardis to be offered and that there were 280 million shares outstanding.

76.     Upon information and belief, at the date of this filing, there are approximately **one billion (1,000,000,000) issued shares of Cardis**.

77.     Plaintiff does not have the net worth, income, experience or sophistication to quality as "accredited investors," which was known, or should have been known by the Defendants.

**The Fraud Continues**

78.     After Plaintiff's investment, Defendants continued to bolster the company claims via phone conversations and emails.

79.     Defendants, wishing to continue their scheme, continued to inform Plaintiff of pending "good news."

80.     In September of 2011, Fischman spoke with Plaintiff regarding an apparent meeting in London which was a "breakthrough" and would bring about tremendous advancement for Cardis.

81.     Upon information and belief, no such advancement was or did occur.

82.     On September 22, 2011, Defendants forwarded an apparent Non-Disclosure Agreement ("NDA") with the largest bank in Russia, Sberbank.  Conveniently, this four (4) page document's fourth page, containing the signature page, was completely obscured.

83.     Moreover, this NDA was to be confidential, yet Defendants chose to share it with apparently only one or few actual investors.

84.     On October 25, 2011, a Letter of Intent was forward regarding the same Russian bank as well as a list of additional companies the Defendants were "in talks with."

85.     The above-mentioned documentation, and others, made it appear as if Cardis was a flourishing and positive investment with its goals being realized.

86.     However, upon information and belief, none of these "talks" were even close to realization.  The sole purpose of these communications were to bolster the appearance of a healthy and functioning company.  When, in reality, the Individual Defendants were and are using Cardis as a personal bank.

**Defendants Get Bolder**

87.     On or about November 9, 2011, the Individual Defendants approached Plaintiff, seeking a Bridge Loan.

88.     It was at this point that that Brown claimed to have hired Goldman Sachs to lead Cardis' Private Placement.  Brown stated that Cardis would be funded within the next 45-90 days.

89.     Upon information and belief, Goldman Sachs was never retained.

90.     This was a drastically different statement then Fischman had made to Plaintiff, as Fischman had claimed Cardis did not need any further funding.

91.     Defendants offered loan terms with Plaintiff for a loan of $75,000 with a structured note that should Cardis default, Plaintiff would receive one (1) cent warrants in Cardis.

92.     Upon information and belief, this loan was offered due to the complete depletion of Cardis funds by the Individual Defendants for their own pocket.  In essence, the Individual Defendants needed more pocket money so they approached Plaintiff and possibly others to get it.

93.     At this same period, the Individual Defendants communicated to Plaintiff that they are about to enter into an agreement any moment with a Canadian company which will bring about additional funds and profits for Plaintiff and other similarly situated investors.

94.     Upon information and belief, at the time the above statement was made to Plaintiff, any possible deal was already dead and there was absolutely no further deal-making occurring with the Canadian company.

95.     Moreover, the Individual Defendants knew that there was no-deal,  yet they knowingly and intentionally continued to propagate this false deal in order to induce Plaintiff into agreeing to the above-mentioned loan.

96.     Plaintiff, due to a lack of funds, did not give the loan.

**Dubious Press Releases and False Promises**

97.     In November of 2011, Defendants issued a press release in which they merely restated the event which had been communicated to Plaintiff in October of 2011.

98.     Upon information and belief, none of the purported talks and deals resulted in any benefit to the company or its investors; Defendants were merely parroting positive talking points.

99.     Moreover, Defendants continued to maintain that Cardis "is vastly superior to any existing technology" for low-cost solutions regarding LVP.

100.     On February 28, 2012, Defendants issued an additional press-release regarding a purported roll-out of Cardis technology across Russia as well as the development of other deals.

14

101.    Upon information and belief, Defendants knew or should have known that the statement regarding Russia was materially misleading.

102.    Defendant regularly sent such shareholder letters to Plaintiff in which they re-stated in sum and substance the advancement and continued deal making of Cardis.

103.    However, upon information and belief, no such advancement or deal making was occurring.

104.    2012 came and went and there was no proliferation of Cardis technology anywhere in the world at all.

105.    Throughout 2013, Defendants issued similar press releases, all claiming furtherance of Cardis business and additional business connections.

106.    2013 came and went, and there was no IPO.

107.    On or about March 26, 2015, Defendant sent a document Plaintiff claiming the partnership with the app developer PureSolo.

108.    PureSolo was to create a mobile application geared towards the music industry and applying Cardis technology.

109.    However, upon information and belief, this agreement did not result in any actual event occurring nor any application of Cardis technology.

110.    On or about July 14, 2015, the Individual Defendants communicated with Plaintiff regarding "major updates" and "major companies."

111.    The communication which followed claimed to have Cardis and Visa joining forces.

112.    Yet, as with all the prior events, this resulted in nothing actually occurring.

113.    The constant statements of positive outlook and declarations of advancement were merely done to encourage investors and discourage a deeper look into the actual workings of a fraudulent scheme.

**In-Person Conversation**

114.    After multiple attempts spanning a significant amount of time, Plaintiff was able to secure a meeting with Fischman.

115.    This meeting occurred on February 19, 2016 within Choshen and Cardis USA's office.  The meeting was to be off the record and informal.

116.    During the meeting, Plaintiff requested information about Cardis' future prospects as well as the status of pending lawsuits.

117.    Fischman stated that Cardis was in effect dead in the water in that it did not have any income at all.  In fact, for the past two (2) years two angel investors were keeping the company afloat.

118.    Shocked by this statement, Plaintiff reminded Fischman of his prior statement of raising approximately seventy million dollars ($70,000,000) from investors and inquired where the money went.

119.    Fischman stated in sum and substance that it went to salary and research for the company.

120.    Fischman further stated that Cardis did not actually have a platform in which to apply the apparent proprietary technology.

121.    Fischman then offered Plaintiff an investment opportunity in a spin-off company of Cardis which would target radio stations and mobile application users of music aimed at the African American community.

16

122.   Fischman claimed that Cardis itself would own half of this new company and that the company would be ready to launch in April of 2016.

123.   When pressed for details, Fischman was unable to provide any.

124.   Plaintiff declined to invest in this "new" company.

125.   Plaintiff requested a copy of the patents for which Cardis claims its technology rests upon.

126.   Fischman promised to send these immediately.

127.   Upon information and belief, after the above meeting, Fischman offered to reprice stock in Cardis for a group of investors mainly located in Brazil for 15 cents a share.

128.   On March 30, 2016, Fischman communicated with Plaintiff Dvora Weinstein that he is now sending the patents and that Plaintiff Dvora Weinstein should not share this information with anyone.

**Discovery of a Fraudulent Scheme**

129.   Upon review of the patents sent by Fischman, it became clear that Cardis does not have proprietary rights over its claimed technology as Defendants have allowed its claimed fundamental patents to expire or nearly expire.

130.   Moreover, based on the conversation with Fischman and a 20-20 hindsight perspective, Plaintiff now realized that they had been defrauded.

131.   From the very beginning of Plaintiff's investment in Cardis, Defendants repeatedly stated that it had proprietary technology that market-ready.  Furthermore, Defendants had claimed it had the business relationships and procedures in place to take Cardis to an IPO.

132.   Moreover, it is upon information and belief that the Defendants are still on a Road Show to raise capital for Cardis.

133.    These statements were materially false and misleading and were known by Defendants to be false, or were recklessly disregarded as such thereby.  Defendants intentionally and directly mislead investors into believing the viability and profitably of Cardis.

134.    Each Defendant knew, or should have known, that such statements would be issued or disseminated to investors and potential investors and knowingly and substantially participated in or acquiesced in the drafting, issuance, or proliferation of such statements as a primary violation of Federal and State Securities laws.

135.    Each Defendant, by virtue of their receipt or reckless disregard of information reflecting the truth about Cardis and their control over Cardis statements, knowingly or recklessly participated in the fraudulent scheme and conduct alleged herein.

136.    Defendants sought out and obtained investments from members of their own community, knowing and believing that said members would be easy targets due to many being unaccredited investors and the known trust community members generally give to one another.

137.    The Individual Defendants aided and abetted one another as to the material misrepresentations and group-published information.

### SCIENTER

138.    Defendants made the above-mentioned material misrepresentations and omissions with scienter, as demonstrated by the following facts

139.    At all relevant times, the material misrepresentations and omissions made to Plaintiff, between 2011 and 2016, directly or proximately, or were a substantial contributing factor to, the damages sustained by the Plaintiff are so stated herein.

140.    The Individual Defendants, who control Cardis, were in a position to know or should have known, about the actual status of the above-mentioned "deals" and "agreements" between Cardis and the above-mentioned entities were unrealized and leading nowhere.

141.    Yet, the Individual Defendants used and continue to use these purported relationships as evidence of Cardis' success in promotional material directed at current and future investors.

142.    The Individual Defendants are in a position to know, or should have known, the correct valuation of Cardis, yet they have repeatedly changed the valuation for Cardis as represented to Plaintiff and other investors.

143.    Defendants made, or caused to be made, materially misleading statements and omissions regarding Cardis' business, future prospects and growth potential.  These material misstatements and omissions directly caused Plaintiff to have an unrealistic and specious comprehension about Cardis's business, future prospects and growth potential.  This directly resulted in the purchase of Cardis Stock by Plaintiff.

144.    Defendants furnished materially untrue and misinformation to Plaintiff.  The claims made by Defendants regarding the market readability of the Cardis Software and sales of working end-user software, were known to be false at the time of dissemination.

145.    Defendants knowingly misrepresented the outstanding shares and liquidity of the Cardis.  Defendants were and are in positions of knowing to these fundamental facts of the Cardis.

146.    In making their investments, Plaintiff reasonably relied on these and other material misrepresentation made by the Defendants.

147.    Defendants' actions constitute blatant and unmitigated fraud.

**NO SAFE HARBOR**

148.    Defendants' engaged in a scheme to defraud initial investors and then worked to maintain that fraud via years of press releases and misinformation.

149.    Such actions do not fall under the Safe Harbor provisions of Securities law due to the inherent nature specific to these facts.

150.    Individual Defendants made all statements with knowledge.  Their positions within the Cardis corporate structure allow for the Individual Defendants to know, or should have known, the material false statements that were being issued by Defendants.

151.    Moreover, to induce Plaintiff to invest, Defendants put forth claims of past success which was knowing and materially false at the time stated.

**LOSS CAUSATION**

152.    Defendants' material misrepresentations and omissions allowed for Defendants to engage in a fraudulent scheme thereby deceiving Plaintiff and other investors.

153.    By materially falsifying Cardis' product development information and sales, Defendants caused Plaintiff to invest in Cardis.

154.    In truth, the Defendants did not and currently does not have the market ready technology it claims to have nor the relationships it claims to have developed.

155.    Moreover, the funds which have been raised by investors, including Plaintiff, have solely been used to benefit the Individual Defendants.

156.    As a direct result in Plaintiff's investment with the Defendants.  Plaintiff has suffered damages as economic loss pursuant to applicable law.

**<u>FIRST CAUSE OF ACTION</u>**
Violation of Section 10(B) of the Exchange Act and Rule 10b-5 promulgated thereunder
(Against All Defendant)

157.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

158.    As stated herein, Defendants carried out a scheme via a course of conduct which intended to, and did: (i) deceive Plaintiff; and (ii) bring about Plaintiff's purchase of stock in Cardis.  In furtherance of this unlawful scheme and course of conduct Defendants committed the following acts:

     i. Employed devices, schemes and artifices to defraud;

     ii. Made false statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and

     iii. Engaged in acts, practices, and a course of dealing that operated as fraud and deceit upon Plaintiff.

159.    Said acts were a violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 promulgated thereunder.

160.    Defendants, both individually and in concert, directly and indirectly, through the use, means, and/or instrumentalities of interstate commerce and mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations, past history and future prospects of Cardis.

161.    Defendants sold stock to investors at and within the United Stated directly from their Cedarhurst, NY location.

162.    Defendants employed devises, schemes, and artifices to defraud and engage in acts, practices and a course of conduct in an effort to assure investors of Cardis' value, performance and growth.  This effort included the making of, or participation in, the publication of untrue statements of material facts and/or omission of material facts necessary to make the

21

statements made about Cardis, its business operations and future prospects not misleading, under the circumstances.

163.    Defendants engaged in transactions and practices via a course of business that operated as a fraud and deceit upon Plaintiff and those similarly situated.

164.    Defendant's primary liability and control person liability stems from the following:

i.    Individual Defendants are high-level directors, executives and/or agents of Cardis and had control thereof;

ii.    Individual Defendants, by virtue of their responsibilities and actions as an officer or director of Cardis was privy to and participated in the creation development and distribution of Cardis Private Placement Memorandum and other documents detailing the inner workings of the company and its financial condition;

iii.    Individual Defendants enjoyed significant personal contact and familiarity with the each other and the Corporate Defendants and had access to other members of the Cardis management team, internal report, and other information regarding Cardis' finances, operations, and sales at all relevant times; and

iv.    Each Defendant was aware of Cardis' dissemination of information to investors which they knew, or recklessly disregarded, was materially false and misleading.

165.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard of the truth in that they **failed to** ascertain and to **disclose** such facts, even though such facts were readily available to them.

166.    Said misrepresentations and/or omissions were material and were published and/or omitted for the purpose and effect of concealing Cardis' true operating condition and lack of future business prospects from active and potential investors as a mean of defrauding investors in order for the Individual Defendants to take the proceeds of any investment for themselves.

167.    As demonstrated by Defendants' exaggerations, overstatements, and misstatements of Cardis' sales, liquidity, past accomplishments and future prospects, Defendants acted in a manner, that if not intentional, is egregiously reckless in its failure to obtain what should be readily accessible information as so required by law.

168.    Plaintiff purchased Carids securities in reliance upon Defendants' statements and in ignorance of the fact that:

  i.   Cardis' statements about its product and product readiness were untrue;

  ii.  Cardis' sales figures were at best inaccurate and at worst outright fraud;

  iii. Statements made regarding Defendants going public via IPO were untrue; and

  iv.  Cardis had established a business platform and relationships that would bring the product to market globally were untrue.

169.    Plaintiff's reliance on these material false and misleading statement by Defendants caused about Plaintiff's damage.

170.    Prior to and during Plaintiff's investment in Cardis, Plaintiff had no means to independently verify the veracity of Defendants' statements.

171.    Had the truth been made known, Plaintiff would have never purchased Cardis stock.

172.    Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

173.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in connection with the purchase of Cardis stock.  Upon information and belief, said stock is worthless.

174.    This action was filed within two years of discovery of the fraud and within five years of the Plaintiff's purchase of the securities giving rise to this matter.

## SECOND CAUSE OF ACTION
Violation of Section 20(a) of the Exchange Act
(Against the Individual Defendants)

175.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

176.    The Individual Defendants acted as control persons of Cardis within the meaning of Section 20(a) of the Exchange Act.

177.    The Individual Defendants' are all highly placed within the Cardis organization. Each had and has a knowledge and access to information relating to Cardis' operations. Defendants had and have the power, influence and control over statements and publications issued by Cardis to both the prospective investor and current one.  Defendants' similarly control the decision making process behind Cardis.

178.    Prior to the dissemination of the material false and misleading items given to Plaintiff, Defendants had access to these items.  Defendants made no move to correct any material misrepresentation or omission contained in the many communications between

24

Defendants' and Plaintiff.  Moreover, the Individual Defendants had direct supervisory involvement in the day-to-day operations of Cardis, and is presumed to have had the power to control or influence the particular transactions and communication giving rise to the securities violations being alleged herein.

179.    As stated, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder due to their acts and/or omissions.

180.    As a direct and proximate result of the Indiviudal Defendants' conduct, Plaintiff have suffered damages in connection with the purchase of Cardis stock.  Upon information and belief, said stock is worthless.

181.    This action was filed within two years of discovery of the fraud and within five years of the Plaintiff's purchase of the securities giving rise to this matter.

### THIRD CAUSE OF ACTION
Common Law Fraud
(Against all Defendants)

182.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

183.    Defendants knowingly made material oral and written misrepresentation and/or omitted material facts necessary to clarify otherwise misleading statements.

184.    Defendant made such knowing misrepresentations and/or omissions regarding Cardis' business plan; the progress of Cardis' acceptance amongst vendors; bringing Cardis to IPO; and other matters.

185.    At the time the material misrepresentations and omissions were made, Defendant knew them to be false, or alternatively, knowingly and recklessly disregarding the veracity of the

statements made.  Defendants did to in order to induce reliance by Plaintiff and to obtain an investment from Plaintiff.

186.    Defendants were aware that that the materially false information would be used by Plaintiff in their determination to invest and to continue with Cardis.

187.    Plaintiff reasonably relied upon the false representations and omissions of material fact for the particular purpose described herein.

188.    Plaintiff's reliance on Defendants' statements was foreseeable and justified.

189.    Plaintiff's reliance upon Defendants' statements caused financial loss as stated herein.

190.    Plaintiff is entitled to damages caused by this wrongful conduct in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
Fraud in the Inducement
(Against all Defendants)

191.    Plaintiff repeat and realleges each and every eallegation above as if set forth in full herein.

192.    Defendants knowingly made material oral and written misrepresentation and/or omitted material facts necessary to clarify otherwise misleading statements.

193.    Defendant made such knowing misrepresentations and/or omissions regarding Cardis' business plan; the progress of Cardis' acceptance amongst vendors; bringing Cardis to IPO; and other matters.

194.    At the time the material misrepresentations and omissions were made, Defendant knew them to be false, or alternatively, knowingly and recklessly disregarding the veracity of the

statements made.  Defendants did to in order to induce reliance by Plaintiff and to obtain an investment from Plaintiff.

195.    Defendants were aware that that the materially false information would be used by Plaintiff in their determination to invest and to continue with Cardis.

196.    Plaintiff reasonably relied upon the false representations and omissions of material fact for the particular purpose described herein.

197.    Plaintiff's reliance on Defendants' statements was foreseeable and justified.

198.    Plaintiff's reliance upon Defendants' statements caused financial loss as stated herein.

199.    Plaintiff is entitled to damages caused by this wrongful conduct in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
Equitable Fraud
(Against all Defendants)

200.    Plaintiff repeat and realleges each and every eallegation above as if set forth in full herein.

201.    Defendants knowingly made material oral and written misrepresentation and/or omitted material facts necessary to clarify otherwise misleading statements.

202.    Defendant made such knowing misrepresentations and/or omissions regarding Cardis' business plan; the progress of Cardis' acceptance amongst vendors; bringing Cardis to IPO; and other matters.

203.    At the time the material misrepresentations and omissions were made, Defendant knew them to be false, or alternatively, knowingly and recklessly disregarding the veracity of the

statements made.  Defendants did to in order to induce reliance by Plaintiff and to obtain an investment from Plaintiff.

204.    Defendants were aware that that the materially false information would be used by Plaintiff in her determination to invest and to continue with Cardis.

205.    Defendants misrepresented and concealed material facts as to the terms of Plaintiff's investment.

206.    Plaintiff reasonably relied upon the false representations and omissions of material fact for the particular purpose described herein.

207.    Plaintiff's reliance on Defendants' statements was foreseeable and justified.

208.    As a result of Defendants' equitable fraud, Plaintiff has been damaged.

<u>**SIXTH CAUSE OF ACTION**</u>
Conversion
(Against all Defendants)

209.    Plaintiff repeat and realleges each and every eallegation above as if set forth in full herein.

210.    Plaintiff invested in Cardis with an understanding that they were purchasing stock in a company, not that they were personally financing the Defendants.

211.    Defendants converted this investment for their own personal use, not consistent with their duties and obligations to Plaintiff.  Moreover, upon information and belief, Defendants exercised unauthorized dominion and control over the monies given by Plaintiff to be invested in Cardis, taking said monies for their own pocket.

212.    As a result of Defendants' wrongful conversion, Plaintiff has been damaged.

<u>**SEVENTH CAUSE OF ACTION**</u>
Accounting
(Against all Defendants)

213.    Plaintiff repeat and realleges each and every eallegation above as if set forth in full herein.

214.    As a shareholder in Cardis, Plaintiff is entitled to a full and proper accounting of sales, transfers, assignments, liens, encumbrances, payments, fees, salaries, and/or other such dispositions of any and all Cardis funds and assets since the date of Cardis' formation.

### EIGHTH CAUSE OF ACTION
Unjust Enrichment
(Against all Defendants)

215.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

216.    Plaintiff invested in Cardis with an understanding that they were purchasing stock in a company, not that they were personally financing the Defendants.

217.    Defendants have secreted these monies away from their own use without consideration or justification.

218.    As a result, Defendants have been unjustly enriched by Plaintiff's investment in Cardis and Plaintiff has been damaged.

### CAUSE OF ACTION
Breach of Fiduciary Duty
(Against the Individual Defendants)

219.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

220.    The Individual Defendants owe Plaintiff the utmost fiduciary duties of due care, good faith and loyalty. The Individual Defendants, separately and together, in connection with the management of Cardis, violated their fiduciary obligations owed Plaintiff, including, *inter alia*, the duty to:

    a.          undertake an appropriate evaluation of Cardis'
worth as a company;

    b.          act independently so that the interests of Cardis
shareholders will be protected and enhanced;

    c.          engage in fair dealing and full disclosure with
shareholders

221.    Due to the above-mentioned conduct and mismanagement of Cardis, the Individual Defendants have breached their duties of loyalty, due care, good faith and independence.

## PUNITIVE DAMAGES

222.    As a direct and proximate cause of Defendants' violations alleged herein, Plaintiff has been significantly damaged in an amount to be proven at trial.  Plaintiff is entitled to punitive damages as Defendants' acted with an intentional and evil mind and with the intent to cause injury, or recklessly disregarded the substantial risk of harm to Plaintiff and those similarly situated.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seek judgement against the Defendants at follows:

    a.    An award of compensatory damages in favor of Plaintiff against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing in an amount to be determined at trial, but not less than $300,000, including interest accrued thereupon;

    b.    Punitive damages in an account to be determined at trial;

c.  An award for Plaintiff's reasonable costs and expenses incurred in

bringing this action, including, but not limited to counsel and expert fees;

d.  An injunction against the Individual Defendants, prohibited them from

acting as an officer or director of any issuer that has a class of securities

registered pursuant to Exchange Act Section 12 (15 U.S.C. § 78l) or that is

required to file reports pursuant to Exchange Act Section 15(d) (15 U.S.C.

§ 78o(d));

e.  Any and all further relief that this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby request a trial by jury for all issues so

triable.

Dated:          New York,
                May 25, 2016

Respectfully Submitted,

**The Law Office of
Jacob Z. Weinstein, PLLC**
*Attorney for Plaintiff*

By:     __/s/ Jacob Z. Weinstein_____
        JACOB Z. WEINSTEIN, ESQ.
        545 FIFTH AVENUE
        SUITE 840
        NEW YORK, NY 10017
        TELEPHONE:     (646) 450-3484
        FACSIMILE:     (646) 774-0368
        E-MAIL:        JZW@JZWEINSTEINLAW.COM

31