UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X
DVORA WEINSTEIN,

                            Plaintiff,

      -against-

CARDIS ENTERPRISES INTERNATIONAL N.V., AARON
DAVID FISCHMAN, STEVE BROWN, AVI TOKAYER,
LAWRENCE KATZ, CHOSHEN ISRAEL GROUP, LLC, and
CARDIS ENTERPRISES INTERNATIONAL (U.S.A.),

                          Defendants.
------------------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
16-CV-2661 (SJF)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for Report and Recommendation, are the following three Motions to Dismiss made of behalf of Defendants: 1) Steve Brown ("Brown"), *see* Steve Brown's Motion to Dismiss ("Brown Motion"), Docket Entry ("DE") [46]; 2) Cardis Enterprises (U.S.A.) International Inc. ("Cardis U.S.A."), Choshen Israel Group, LLC ("Choshen"), Aaron David Fischman ("Fischman"), and Lawrence Katz ("Katz"), *see* Cardis U.S.A, Choshen, Fishman, and Katz's Motion to Dismiss ("Cardis U.S.A. Motion"), DE [51]; and 3) Cardis Enterprises International N.V. (Cardis N.V.), and Avi Tokayer ("Tokayer"), *see* Cardis N.V. and Tokayer Motion to Dismiss ("Cardis N.V. Motion"), DE [88].[1]   By way of background, Plaintiff Dvora Weinstein ("Plaintiff" or

---

[1] In support of their motion, Cardis N.V. and Tokayer state that they "adopt and incorporate the arguments set forth in the Cardis' Memorandum of Law and Cardis' Memorandum of Law in Further Support of their Motion to Dismiss the FAC . . . as if set forth in full here."  *See* Cardis N.V. Memorandum in Support, DE [90], at 3.  In opposition, Plaintiff argues that the Cardis N.V. Motion attempts to impermissibly incorporate by reference the arguments of the Cardis U.S.A. Motion.  Such incorporation by reference, however, has been recognized and accepted in this District.  *See Jewish*

"Weinstein") filed her Complaint in this action on May 25, 2016, *see* Complaint ("Compl."), DE [1], and subsequently amended the Complaint one day later. *See* Amended Complaint ("Am. Compl."), DE [4].  On June 6, 2017, pursuant to this Court's Scheduling Order, *see* DE [79], Plaintiff moved for leave to amend her Complaint. *See* Motion to Amend Plaintiff's First Amended Complaint, DE [95].  On June 26, 2017, without opposition, this Court granted Plaintiff's motion and directed that she file her Second Amended Complain within ten days of the Order.  *See* DE [98].  On July 7, 2017, Weinstein filed her Second Amended Complaint.  *See* Plaintiff's Second Amended Complaint ("SAC"), DE [99].  The SAC alleges violations of:  (1) section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder; and (2) Section 20(a) of the Exchange Act; as well as common law claims for (3) fraud; (4) fraud in the inducement; (5) equitable fraud; (6) conversion; (7) accounting; (8) unjust enrichment; and (9) breach of fiduciary duty.  *See generally* SAC.  For the reasons stated herein, the Court recommends that:  1) the Brown Motion be granted in total; 2) the Cardis U.S.A. Motion be granted in part and denied in part; and 3) the Cardis N.V. Motion be granted in part and denied in part.

---

*People for the Betterment of Westhampton Beach v Vil. of Westhampton Beach*, 2:12-CV-3760 (LDW), 2013 WL 11322083, at *1 (E.D.N.Y. May 21, 2013), *aff'd*, 778 F.3d 390 (2d Cir 2015) (granting defendant "LIPA's" motion for "judgment on the pleadings [where] said Motion incorporated by reference certain arguments made by Defendant Verizon New York Inc. in its Motion to Dismiss."). Accordingly, for the sake of judicial economy, the arguments made in the Cardis U.S.A. motion are incorporated by reference.

I.      BACKGROUND

A.  **Relevant Facts**[2]

1.  *The Parties*

Plaintiff Dvora Weinstein is a resident of New York and a shareholder of Defendant Cardis NV, a foreign limited liability corporation organized under the laws of Curacao with a place of business in Amsterdam, Netherlands.  *See* SAC ¶¶ 29-30. The company was incorporated in 1998 "to provide a unique solution for processing low-value credit card payments with advertised 'game changing' cost efficiency . . . [t]hrough apparent patented aggregation technology . . . ."  *Id.* ¶¶ 43, 46.  Plaintiff asserts that Cardis NV operates in the United States under Cardis Enterprises International (U.S.A.), Inc. ("Cardis USA"), another Defendant in this action, and that "there is absolutely no distinction" between Cardis NV and Cardis USA.  *Id.* ¶¶ 33, 45.

Individual Defendant Fischman, who also resides in New York, is the Chief Executive Officer of Cardis USA and the managing partner of Defendant Choshen, which Plaintiff alleges is used to raise money for Cardis NV.  *Id.* ¶ 35.  Weinstein further claims that Fischman is the "co-founder and Supervisory Board Director" of Cardis NV, although the parties contest his role in the company.  *See id.*; Cardis U.S.A Motion, DE [51-2], at 12 ("Aaron Fischman is not an officer, director, or managing, general, or authorized agent of Cardis NV").  Avi Tokayer ("Tokayer"), who resides in Israel, is also a co-founder of Cardis NV and serves on its Supervisory Board.  SAC

---

[2] The facts are taken from the Second Amended Complaint and are assumed true solely for the purposes of the pending motions.

¶ 36.   The two other individual Defendants are Steve Brown, the Senior Vice President – Finance of Cardis USA, and Lawrence Katz, in-house counsel for both Cardis USA and Choshen.  *Id.* at ¶¶ 37-38.  Both Brown and Katz reside in New York. *Id.* at ¶¶ 37-38.[3]

### 2. *The Alleged Fraudulent Scheme*

In May 2011, an individual investor of Cardis NV approached Weinstein regarding an opportunity for her to invest in the company.  *Id.* ¶ 56.  Plaintiff subsequently met with Fischman at Cardis USA's and Choshen's office in Cedarhurst, New York, where he provided Weinstein with an overview of Cardis NV and offered her a valuation of 50 cents per share.  *Id.* ¶¶ 57-59.  After the meeting, Fischman sent documents to Plaintiff for her review, including a thirteen-page document with an overview of Cardis NV's patents, a Letter of Intent and an unexecuted agreement between Cardis NV and 15,000,000 credit cardholders of Raiffeisen Bank International AG ("RBI"), a leading bank in Central and Eastern Europe, and a Memorandum of Understanding for a subscription agreement between Cardis NV and Visa Europe.  *Id.* ¶¶ 62, 64, 66, 68.  Such communications and documentation convinced Weinstein to invest, and she mailed a check for $300,000.00 to Choshen as consideration for Cardis common stock.  *Id.* ¶¶ 71-72.

Subsequently, the individual Defendants approached Plaintiff for a bridge loan of $75,000.00.  *Id.* ¶¶ 87, 91.  Regarding this request, Brown explained that the company hired Goldman Sachs and that it would be "funded within the next 45-90

---

[3] The corporate and individual defendants are collectively referred to as "Defendants."

days." *Id.* ¶ 88.  Weinstein was further informed of an imminent agreement with a Canadian company that would "bring about additional funds." *Id.* ¶ 93.  However, due to a lack of capital, Plaintiff did not provide the loan. *Id.* ¶ 96.

After her initial investment, Weinstein received phone calls and emails from Defendants that "continued to bolster the company [*sic*] claims . . . ." *Id.* ¶ 78.  In September 2011, Fischman spoke to Plaintiff regarding a meeting in London that would bring a "tremendous advancement" for Cardis NV.  *Id.* ¶ 80.  Weinstein claims that from 2011 through 2015, Cardis NV made numerous public statements, through press releases and other communications, regarding advancements and deal-makings of the company.  *Id.* ¶¶ 97-112.

On February 19, 2016, Weinstein met with Fischman at Choshen and Cardis USA's office and inquired as to Defendants' prospects.  *Id.* ¶¶ 115-16.  She was told that Cardis NV "was in effect dead in the water," and that it "did not actually have a platform in which to apply the apparent proprietary technology."  *Id.* ¶¶ 117, 120. Shocked, Plaintiff inquired as to the money invested, and was told that it went to "salary and research for the company."  *Id.* ¶¶ 118-19.  Fischman then asked Weinstein to invest in a "spin-off company of Cardis," which sought to "target radio stations and mobile application users of music aimed at the African American community." *Id.* ¶ 121.  At the meeting, Plaintiff also requested a copy of the patents that formed the basis of Cardis NV's representations, and, upon review, discovered that "Cardis does not have proprietary rights over its claimed technology . . . ." *Id.* ¶¶ 125, 129.

Weinstein now alleges that the communications from Defendants were riddled with misrepresentations. Regarding the conversations and documents sent pre-investment, she believes that the patents represented to her are "useless," there was no partnership with RBI, and the memorandum of understanding with Visa Europe resulted in "nothing." *Id.* ¶¶ 63, 67, 69. Moreover, Plaintiff asserts that the subsequent communications, including the press releases, were part of a scheme to "bolster the appearance of a healthy and functioning company" where Defendants sought to use "Cardis as a personal bank." *Id.* ¶ 86. For example, she claims that no "advancement" occurred from any meeting in London, there was no deal with the largest bank in Russia or a Canadian company, and Goldman Sachs was never retained. *Id.* ¶¶ 81, 86, 89, 94. Further, despite paying 50 cents per share and being assured that only 280 million shares remained outstanding, Weinstein's shares were re-priced at 38 cents per share and now approximately 1 billion shares have been issued. *Id.* ¶¶ 73, 75-76. Believing that Defendants directly misled her and other investors, particularly those in the Orthodox Jewish Community, "due to the known nature of the community to trust its own members and . . . hesitancy [*sic*] for members of the community to bring legal action against one another," she commenced this litigation. *See id.* ¶ 55.

## B. Procedural History

As set forth above, Plaintiff commenced this action in May 2016 alleging that Defendants engaged in a "fraudulent securities sale scheme." *Id.* ¶ 2. On June 6, 2017, pursuant to this Court's Scheduling Order, Plaintiff moved for leave to amend

her Complaint for a second time, *See* DE [79, 95].  On October 14, 2016, Defendant Steve Brown filed a Motion to Dismiss.  *See* Brown Motion, DE [46].  On October 19, 2016, Defendants Choshen Fischman, Katz, and Cardis U.S.A. filed their Motion to Dismiss.  *See* Cardis U.S.A. Motion, DE [51].  On April 14, 2017, Defendants Cardis N.V. and Tokayer filed their Motion to Dismiss.  *See* Cardis N.V. Motion, DE [88].  On June 26, 2017, without opposition, this Court granted Plaintiff's motion and directed that Plaintiff file her Second Amended Complaint within ten days of the Order, which she did on July 7, 2017.  *See* SAC", DE [99].  For the sake of efficiency, the Court addresses Defendants' motions to dismiss to the SAC, even though they were filed prior to the SAC being filed.  *See*, *e.g.*, *Fernando v. Fernando*, No. 09-CV-1390, 2010 WL 3119729, at *3 (E.D.N.Y. Aug. 5, 2010) (Considering a motion to dismiss with reference to a subsequently filed amended complaint).

## II.    Legal Standard

### A. <u>Motion to Dismiss</u>

In considering a motion to dismiss pursuant to Rule 12(b)(6), district courts "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)).  "[A] complaint is not required to have 'detailed factual allegations, but it demands more than an unadorned, the defendant-

unlawfully-harmed-me accusation.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949).

## III. DISCUSSION

As set forth above, the SAC alleges, and Defendants move to dismiss, the following nine causes of action:  1) violation of Section 10 of the Exchange Act and Rule 10b-5 against all Defendants (First Cause of Action);  2) violation of Section 20(a) of the Exchange Act against the Individual Defendants (Second Cause of Action); 3) common law fraud against all Defendants (Third Cause of Action);  4) fraud in the inducement against all Defendants (Fourth Cause of Action);  5) equitable fraud against all Defendants (Fifth Cause of Action); 6) conversion against all Defendants (Sixth Cause of Action);  7) accounting against all Defendants (Seventh Cause of Action); 8) unjust enrichment against all Defendants (Eighth Cause of Action), and 9) breach of fiduciary duty against the Individual Defendants (Ninth Cause of Action). The Court considers the various causes of action in turn.

### A. <u>Exchange Act Claims</u>

Initially, Plaintiff asserts two separate statutory claims under Sections 10(b) and 20(a) of the Exchange Act against all Defendants.  SAC ¶¶ 50-68.  Section 10(b) renders it unlawful to "use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b); *see Dalberth v. Xerox Corp.*, 766

F.3d 172, 182 (2d Cir. 2014).  SEC Rule 10b-5, which is promulgated pursuant to §

10(b), provides that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  Section 10(b) liability is commonly referred to as "primary

liability." *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,*

*N.A.*, 511 U.S. 164, 191, 114 S. Ct. 1439, 1455 (1994); *Levitt v. J.P. Morgan Sec.,*

*Inc.*, 710 F.3d 454, 467 (2d Cir. 2013).

Section 20(a) of the Exchange Act allows for secondary, or control person,

liability.  It provides, in pertinent part, that "[e]very person who, directly or

indirectly controls any person liable under any provision of this chapter or of any

rule or regulation thereunder shall also be liable jointly and severally with and to

the same extent as such controlled person…unless the controlling person acted in

good faith and did not directly or indirectly induce the act or acts constituting the

violation or cause of action."  15 U.S.C. § 78t(a); *see Steginsky v. Xcelera Inc.*, 741

F.3d 365, 371 (2d Cir. 2014).  A plaintiff asserting a Section 10(b) "primary liability" claim may assert Section 20(a) control person liability against the same defendant as an alternative theory of liability, but a defendant cannot be held liable under both theories.  *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001) ("'Controlling-person liability' is a separate inquiry from that of primary liability and provides an alternative basis of culpability.") (internal citations omitted); *Levy v. Maggiore*, 48 F. Supp. 3d 428, 440 (E.D.N.Y. 2014) ("'Controlling-person liability' may be pled as an alternative to primar[y] liability as a basis for establishing liability.") (internal citations omitted); *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 368-69 (S.D.N.Y. 2013) ("While a party cannot be held liable for both a primary violation and as a control person, alternative theories of liability are permissible at the pleading stage.") (quoting *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 416 (S.D.N.Y. 2010)).

### 1.  *Plaintiff's Section 10(b)/Rule 10b-5 Claims*

The First Cause of Action of the SAC seeks to hold all Defendants liable under Section 10(b) of the Exchange Act and Rule 10b-5 for allegedly making several false and misleading statements about Cardis NV, including statements regarding product readiness and sales figures, and the fact that the company would soon be going public. *See* SAC ¶¶ 221-238.  To state a viable claim under Section 10(b) and Rule 10b-5, a complaint must allege:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Carpenters Pension Trust Fund*

*of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157, 128 S. Ct. 761, 768 (2008)). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in his own right." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S. Ct. 2296, 2302 (2011).

Even where a complaint does not specifically allege that a particular defendant is the direct "maker" of a material misstatement, the complaint may nonetheless survive dismissal under the "group pleading doctrine," which "allows plaintiffs to 'rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information are the collective work of individuals with direct involvement in the everyday business of the company.' " *Dodona I, LLC v. Goldman Sachs & Co.*, 847 F. Supp. 2d 624, 647 n. 13 (S.D.N.Y. 2012) (quoting *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999)). A Section 10(b) / Rule 10b-5 plaintiff may not rely upon the group pleading doctrine unless he shows that there is a "'tight weave of connections between' all [of] the Defendants." *Id.* (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010)). To invoke the group pleading doctrine, the plaintiff "must allege facts sufficient to show that the defendants had knowledge that the statements were false at the time they were made." *In re Citigroup, Inc. Secs. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004). In addition, the group pleading doctrine does not apply

to oral statements. *Elliot Assocs., L.P. v. Covance, Inc.*, 00 Civ. 4115, 2000 WL 1752848, at *12 (S.D.N.Y. Nov. 28, 2000) (noting that "[t]o allow group pleading in the context of oral statements would unduly expand its ambit beyond that contemplated by the Second Circuit when it adopted the theory.").

In addition to these basic elements, a complaint asserting a Section 10(b) claim is also subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 109 Stat. 737. *See, e.g., Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) ("To meet the pleading standard of Rule 9(b), this Court has repeatedly required, among other things, that the pleading 'explain why the statements were fraudulent.'… The PSLRA imposes similar requirements to claims brought under the Exchange Act."). Rule 9(b) provides that, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Stating the circumstances of fraud with sufficient particularity means: "(1) specify[ing] the statements that plaintiff contends were fraudulent, (2) identify[ing] the speaker, (3) stat[ing] where and when the statements were made, and (4) explain[ing] why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting *Rombach*, 355 F.3d at 170).

"The PSLRA expand[s] on the Rule 9(b) standard, requiring that 'securities fraud complaints specify each misleading statement; that they set forth the facts on which a belief that a statement was misleading was formed; and that they state

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345, 125 S. Ct. 1627, 1633 (2005)) (internal alterations omitted).   The required state of mind in a Section 10(b) case – scienter – is an intent "to deceive, manipulate, or defraud." *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S. Ct. 2499, 2504 (2007)) (additional citations omitted).   In this Circuit, allegations of recklessness – defined as "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it" – may suffice to establish "a sufficiently culpable mental state for securities fraud."   *Id.* (internal citations, quotations, and alterations omitted).

### i.   Brown, Tokayer, and Katz

Here, Plaintiff has not adequately pled a Section 10(b) or Rule 10b-5 claim against Brown, Katz or Tokayer.  As to Tokayer, Plaintiff's SAC fails to allege that Tokayer took any action or made any statements at all regarding her investment. Plaintiff argues that "Tokayer's standing as a founder and prospector for Cardis evince his integral connection with the company."   *See* Plaintiff's Opp. to Cardis N.V. Motion ("Plaintiff's Cardis N.V. Opp.), DE [90], at 10.  Weinstein does not allege, however, that she ever communicated with Tokayer or that Tokayer was the source of any misleading information that Plaintiff or other investors received.  As such, Plaintiff has failed to adequately plead that Tokayer was the direct maker of

a material misrepresentation or omission. *See Honig v. Cardis Enterprises Int'l N.V.*, No. 14-CV-7548 (SJF) (GRB), 2016 WL 6304695, at *9 (E.D.N.Y. Oct. 27, 2016) (dismissing claims as plaintiff had failed to allege any communications with Tokayer).

Weinstein also fails to adequately plead that Tokayer would be liable under the group pleading doctrine. Plaintiff offers no facts that would allow the Court to infer that Tokayer, as a resident of Israel, had a "direct involvement in the everyday business of the company" sufficient to establish liability. *See Levy*, 48 F. Supp. 3d at 451 (dismissing claims against director-defendants where "Plaintiff only allege[d] that [defendants] are members of the Board of Directors" and complaint "contain[ed] very few allegations which do not support a finding that the board members ... were 'corporate insiders with direct involvement in the daily affairs of [the company]"). Accordingly, Weinstein's Section 10(b) or Rule 10b-5 claim should be dismissed as to Tokayer.

Additionally, Plaintiff fails to adequately plead a Section 10(b) or Rule 10b-5 claim against Brown. Weinstein alleges that Brown's written communication requesting a "Bridge Loan" is evidence of the Brown's involvement in the fraudulent scheme. *See* Plaintiff's Opposition to Defendant Brown's Motion to Dismiss ("Plaintiff's Brown Opp."), DE [47], at 6. She further alleges that Brown "claimed to have hired Goldman Sachs to lead Cardis' Private Placement. *See* SAC ¶ 107. These statements, however, took place after Plaintiff invested her funds and did not result in a subsequent investment. *See* SAC ¶¶ 115-119.

Therefore, Plaintiff has failed to allege that she suffered an actual loss due to any misrepresentations allegedly made by Brown. *See Solow v. Citigroup, Inc.*, 507 Fed. Appx. 81, 82 (2d Cir. 2013) (dismissing securities fraud claim and explaining that "to establish loss causation, a plaintiff must allege that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffere[d.]") (emphasis in original).   Accordingly, Weinstein has failed to allege a causal connection between any statements purportedly made by Brown and her economic loss through the purchase of Cardis stock.

Similarly, Weinstein fails to satisfy the requirements of the group pleading doctrine with respect to Brown.  As discussed above, Plaintiff fails to allege any facts demonstrating that Brown was involved in her initial investment.  Further, the SAC does not allege Brown had any involvement with the prospectuses, offering documents, press releases or other allegedly misleading documents that she relied on in making her investment.  Moreover, Plaintiff does not allege any sustained direct involvement in the daily affairs of Cardis which would allow this Court to infer that Brown participated in drafting the allegedly misleading documents. *See In re BISYS Sec. Lit.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) (finding that the group pleading doctrine is only available where a plaintiff has "alleged facts indicating that the defendant was a corporate insider or affiliate with direct involvement in the daily affairs of the company.").  Accordingly, Weinstein fails to adequately plead a viable Section 10(b) or Rule 10b-5 claim under the group pleading doctrine against Brown as well.

Finally, Plaintiff fails to adequately plead a Section 10(b) or Rule 10b-5 claim against Katz.   While Weinstein argues in her opposition papers that "[b]oth Fischman and Katz handed Mrs. Weinstein documents relating to Cardis and its future," *see* Plaintiff's Opp. to Cardis U.S.A. Motion, DE [51], at 5, Plaintiff's SAC, however, is silent as to Katz on this issue.   Instead, Plaintiff alleges only that "Fischman and Katz offered Plaintiff Dvora Weinstein a valuation of 50 cents per-share," SAC ¶ 67, and that Katz requested that, for payment, Plaintiff issue a check directly to "Lawrence Katz, Attorney For [Cardis]," SAC ¶ 87.   As such, Plaintiff fails to allege, with requisite specificity, any misrepresentations directly attributable to Katz.   Weinstein cites *Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986), for the proposition that it is not necessary to allege a specific connection between fraudulent representations in an Offering Memorandum and a defendant where that defendant is an insider participating in the offer of the securities in question. *See* Plaintiff's Opp. to Cardis N.V. Motion at 5.   Plaintiff, however, fails to identify any specific fraudulent representation made in Cardis' Offering Memorandum, instead alleging misrepresentations made in other documents or made by other Defendants.   Accordingly, Weinstein has failed to adequately plead that Katz was the direct maker of a material misrepresentation or omission sufficient to defeat a motion to dismiss.

Weinstein also fails to satisfy the requirements of the group pleading doctrine as to Katz.   As discussed above in relation to Brown, the SAC is similarly silent as to any sustained direct involvement in the daily affairs of Cardis by Katz.

Accordingly, Plaintiff fails to adequately plead a viable Section 10(b) or Rule 10b-5 claim under the group pleading doctrine against Katz, and Defendants' motions to dismiss this cause of action as to Brown, Tokayer, and Katz should be granted.

ii.   <u>Fishman, Choshen, Cardis, and Cardis U.S.A.</u>

The SAC does state a viable Section 10(b) and Rule 10b-5 cause of action against Fischman, Cardis, N.V. and Cardis U.S.A.  Plaintiff adequately alleges several material misstatements attributable to Fischman.  Specifically, the SAC states that, prior to her investment of $300,000 between June and September of 2011, Fischman made misleading statements concerning Cardis N.V.'s operations, technology, and business prospects.  *See* SAC ¶¶ 56-77.  In response, Defendants Fishman, Cardis N.V. and Cardis U.S.A. argue that Plaintiff's allegations of fraud are insufficient to comply with Rule 9(b) as Weinstein fails to set forth matters such as the time, place, and contents of purportedly false representations, as well as the identity of persons making such representations.  *See* DE [51] at 10; *see also* Defendant Cardis N.V. Motion to Dismiss, at 3 (adopting and incorporating the arguments set forth in the Cardis Memorandum of Law).  Cardis N.V. also argues that Plaintiff's Complaint contains 37 allegations that are based upon "information and belief," which lack the required specificity under the heightened pleading requirements of Rule 9(b).  *See* Cardis U.S.A. Motion to Dismiss at 5.  Finally, Cardis N.V. asserts that the remaining allegations fail to state any specific representations that were not either (i) forward looking projections, (ii) true statements about existing prospects and other corporate optimism or (iii) mere puffery.  *See id.*

Accepting Plaintiff's allegations as true, Weinstein has plausibly alleged that Fischman knowingly misrepresented material facts about Cardis N.V.'s technology and business prospects to secure her investment. The SAC adequately sets forth the time, place, and contents of purportedly false representations, and identities of the persons making those representations. Plaintiff alleges that, on May 11, 2011, Fishman met with Plaintiff at Cardis' and Choshen's headquarters in Cedarhurst, New York. *See* SAC ¶ 64. According to Weinstein, Fishman stated that Cardis had market-ready technology and was a profit producing company. *See* SAC ¶ 71. Plaintiff claims that these false statements are misrepresentations because Cardis did not have a working software or other marketable product. *See* SAC ¶¶ 72-74. Further, at that same meeting, Fishman stated that "Cardis was not taking any more investors and did not need any more funds," which was untrue as, at the time, however, because "Cardis was over three-million dollars in debt." *See id.*

Weinstein further alleges that, to induce her to invest, Fishman sent her multiple documents, which included additional misleading statements. *See* SAC ¶ 75. The first document, entitled "Introduction to Cardis," dated March 2010, describes the core features of Cardis' "proven" aggregation technology and asserts that the technology was covered under various patents. *See id.* According to Weinstein, this was false as the identified patents "were useless from a business perspective and have either expired or are pending expiration." *See* SAC ¶ 77. As detailed above, Plaintiff identified May 11, 2011, as the time of the misrepresentation, the Cedarhurst office of Cardis N.V., as the place of the

18

misrepresentation, and Fischman as the maker of the misrepresentation. Accordingly, she has sufficiently pled the material misrepresentations and omissions as required to sustain a Section 10(b) or Rule 10b-5 claim.

Further, the SAC adequately alleges a reckless disregard for the truth sufficient to satisfy the element of scienter. *See Loreley Financing No. 3*, 797 F. 3d at 177 (finding that a plaintiff may establish a strong inference of scienter, among other ways, by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness). Here, Plaintiff alleges that Fischman's statements, such as that Cardis was not seeking additional investors and the current existence of a workable platform, were both false and that Fischman did not honestly believe them at the time they were made. *See Kleinman v. Elan Corp., PLC*, 706 F. 3d 145, 153 (2d Cir. 2013) (stating "subjective statements are actionable only if the defendant's opinions were both false and not honestly believed when they were made"). Accordingly, Plaintiff plausibly alleges facts that constitute recklessness, and establish a sufficient inference of scienter.

Weinstein's SAC also adequately pleads reliance and economic loss due to Fischman's statements for the purposes of a Section 10(b) and Rule 10b-5 claim. Plaintiff adequately alleges that she relied on Fischman's representations, that Cardis N.V. had a marketable technology and a was a profit producing company, in her purchase of Cardis stock. Relating to those representations, Weinstein alleges that she invested $300,000.00 between June and September 2011, *see* SAC ¶¶ 70-73, and that Cardis N.V. stock is currently worthless. Accordingly, she has suffered

an economic loss of at least $300,000 because of the transaction.  *See* SAC, Prayer for Relief.

Finally, the SAC adequately pleads the element of loss causation. "Loss causation is the requirement that a plaintiff allege that the 'defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss.' " *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 305 (S.D.N.Y. 2005) (quoting *Dura Pharms.*, 544 U.S. at 346, 125 S. Ct. at 1634). "To plead loss causation, the complaint[ ] must allege facts that support an inference that [the defendant's] misstatements and omissions concealed circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud." *Lentell v. Merrill Lynch & Co.*, *Inc.*, 396 F.3d 161, 175 (2d Cir. 2005). Where a plaintiff alleges that a defendant "disguised the very risk to which [the plaintiff] fell victim," she has adequately pled loss causation. *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 189 (2d Cir. 2001).  Here, Weinstein alleges that Fishman disguised the very risks that she fell victim to, namely the misrepresentations about Cardis N.V.'s marketable technology, valuable patents, and that the company was going to go public.  Accordingly, Plaintiff has adequately alleged loss causation and pled a Section 10(b) and Rule 10b-5 claim against Fischman.

Further, Fischman's alleged fraudulent statements or actions may be attributable to Cardis N.V., Cardis U.S.A. and Choshen.  *See, e.g., City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 369

(S.D.N.Y. 2012) ("[T]he intent of an executive who acted with scienter can be imputed to the company.") (citing *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008)).  Here, Plaintiff alleges that "Aaron Fischman is the CEO of Cardis USA, co-founder and supervisory Board Director of Cardis, and Choshen's managing partner."  *See* SAC ¶ 34.  In these roles, Fischman's scienter is attributable to Cardis N.V. / Cardis U.S.A, and Choshen. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d at 472; *see also City of Pontiac Gen. Employees' Ret. Sys.*, 875 F. Supp. 2d at 369 (S.D.N.Y. 2012).  Accordingly, Plaintiff has also adequately plead a Section 10(b) or Rule 10b-5 claim against Cardis N.V., Cardis U.S.A, and Choshen, and that portion of Defendants' motions to dismiss should be denied.

### 2. *Section 20(a) of the Exchange Act*

The Second Cause of Action of the SAC seeks to hold the individual Defendants liable under Section 20(a) as control persons.  *See* SAC ¶¶ 218-35.  To plead control person liability under section 20(a), plaintiff must allege: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) the controlling person's culpability in the primary violation.  *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998).  "It is not sufficient for a plaintiff to allege that an individual defendant has control person status; instead, the plaintiff must assert that the defendant exercised actual control over the matters at issue."  *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 415 (S.D.N.Y. 2010) (citing *In re Scottish Re Group Sec. Litig.*, 524 F.Supp.2d 370, 386 (S.D.N.Y.2007)).  Bare allegations of control are insufficient to establish control person liability. *See Neubauer v. Eva-Health*, 158

F.R.D. 281, 285 (S.D.N.Y. 1994), *citing Barr v. Abrams*, 810 F.2d 358, 362-63 (2d Cir. 1987) (a court need not accept as true on a motion to dismiss allegations which amount to simply legal conclusions).

Control person liability need not be pled with particularity and is generally analyzed under the "short and plain" statement analysis of Federal Rules of Civil Procedure 8(a).  *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 415 (S.D.N.Y. 2010).  The culpable participation requirement of § 20(a) "is similar to the scienter requirement of Section 10(b); plaintiffs must 'plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct.' " *In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 661 (S.D.N.Y.2007) (quoting *In re Global Crossing, Ltd. Secs. Litig.*, 471 F.Supp.2d 338, 351 (S.D.N.Y.2006)); *see McIntire v. China MediaExpress Holdings, Inc.*, 927 F.Supp.2d 105, 122–23 (S.D.N.Y. 2013) ("In order to withstand a motion to dismiss, a Section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness."); *In re MBIA, Inc., Sec. Litig.*, 700 F.Supp.2d 566, 598 (S.D.N.Y. 2010) (same).

Here, Plaintiff fails to allege facts that would demonstrate that Brown or Katz had the power to direct the management and policies of Cardis or had actual control over other employees of Cardis.  Plaintiff argues that "it is a reasonable inference to believe that Brown's authority extended to anyone under his command," Plaintiff's Brown Opp. at 7, and that "Katz's equal status at the initial in-person meeting and

his involvement in the fifty-cent evaluation clearly show his high ranking within the Cardis structure." Plaintiff's Cardis U.S.A. Opp. at 10.  However, Weinstein fails to identify any employees that Brown or Katz controlled, and does not specify what misleading statements these hypothetical employees made.  As such, Plaintiff has failed to adequately plead control person liability against Brown and Katz.

Weinstein similarly fails to allege facts demonstrating that Tokayer has control person liability.  The SAC does not allege that Tokayer worked together with any other individuals at Cardis in their alleged fraudulent scheme.  Rather, she argues that, because Tokayer is a founding and controlling member of Cardis, he should have control person liability on that basis alone.  The SAC, however, is devoid of any facts that would demonstrate Tokayer's control of the other individual Defendants or any culpable participation in the allegedly fraudulent scheme.  Moreover, Weinstein offers no facts that would allow the Court to infer that Tokayer, located in Israel, had a "direct involvement in the everyday business of the company."  *See, e.g., Levy*, 48 F. Supp. 3d at 451-52 (dismissing claims against director-defendants where "Plaintiff only allege[d] that [defendants] are members of the Board of Directors" and complaint "contain[ed] very few allegations which do not support a finding that the board members … were 'corporate insiders' with direct involvement in the daily affairs of [the company]").  Accordingly, the SAC fails to state a viable Section 20(a) claim against Tokayer.

Finally, Plaintiff also fails to properly plead a viable Section 20(a) claim against Fischman.  Weinstein argues that the allegations regarding Fischman

sending unspecified information through his personal secretary qualifies him for control person status.  *See* Plaintiff's Opp. to Cardis U.S.A. Motion at 7.  Plaintiff, however, fails to allege any facts that would demonstrate that Fishman's unnamed personal secretary was a primary violator.  Instead, the SAC alleges that Fischman is a primary violator liable under Section 10(b) rather than a control person liable under Section 20(a).  *See, e.g., Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999) ("Under plaintiff's theory … the Directors would be primary violators rather than control persons … Therefore, under plaintiff's own theory, the Directors could not be control persons and section 20(a) does not apply.").  Accordingly, Weinstein has failed to adequately plead Section 20(a) claims against the individual Defendants and the motions to dismiss this cause of action asserted only against as the individual Defendants should be granted.

### B. Common Law Fraud, Equitable Fraud, and Fraud in the Inducement

In addition to his federal securities fraud claims, Plaintiff alleges "common law fraud" (Third Cause of Action), "fraud in the inducement" (Fourth Cause of Action), and "equitable fraud" (Fifth Cause of Action), based upon the same alleged underlying misrepresentations, stock purchase, and damages that the securities fraud claims are premised upon.  *See* SAC ¶¶ 69-84.  To state a viable fraud claim under New York law, a complaint must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Saltz v. First Frontier, LP*, 782

F. Supp. 2d 61, 75 (S.D.N.Y. 2010) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). The elements of a "fraudulent inducement" claim are functionally equivalent to the elements of a general fraud claim. *See, e.g., Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006) (elements of fraudulent inducement under New York law are "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance") (internal quotations & citations omitted).

"Equitable fraud differs from common law fraud in one respect - the defendant need not know that the representation is false." *Kodak Graphic Communs. Can. Co. v. E. I. du Pont de Nemours & Co.*, No. 08-CV-6553T, 2011 U.S. Dist. LEXIS 115631, at *21 (W.D.N.Y. Sep. 23, 2011). "Courts have long recognized the concept of 'equitable fraud,' which involves the obtaining or retention of a benefit as a result of a breach of fiduciary or equitable duty, even in the absence of an actual intent to defraud." *Frommert v. Becker*, 153 F. Supp. 3d 599, 608 (W.D.N.Y. 2016). "The general principle behind this concept is that it would be inequitable and unconscientious for a party to insist on holding the benefit of a contract which he has obtained through misrepresentations, however innocently made." *Id.* (internal citations omitted).

The elements of and pleading requirements applicable to common law fraud, fraud in the inducement, and equitable fraud claims mirror the elements of and pleading requirements applicable to Section 10(b) claims, so an "identical analysis

applies" to both sets of claims. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326 (S.D.N.Y. 2011) ("The scienter element for common law fraud is essentially the same as that under the federal securities laws.") (internal quotations omitted); *Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (internal quotations & citations omitted); *see also Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010) ("Courts in the Second Circuit have found that the elements of common law fraud are 'essentially the same' as those that must be pleaded to establish a claim under Section 10(b) and Rule 10b-5.") (citing *Fezzani v. Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008)).

As Plaintiff has stated a viable Section 10(b) claim against Fischman, Cardis N.V., and Cardis U.S.A., she has also stated viable common law fraud, fraud in the inducement, and equitable fraud claims against these Defendants. Similarly because she fails to state a viable Section 10(b) claim against Katz, Brown, and Tokayer, she has also failed to state a viable common law fraud, fraud in the inducement, and equitable fraud claims against these defendants. Accordingly, Defendants' motions to dismiss Plaintiff's common law fraud, fraud in the inducement, and equitable fraud claims should be granted as to Katz, Tokayer, and Brown, but denied as to Fischman, Cardis N.V. and Cardis U.S.A.

### C. Conversion

Plaintiff's conversion claim also fails. Conversion is the "[u]nauthorized and wrongful exercise of dominion and control over another's personal property." *Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 883 (S.D.N.Y.1991)

(quoting Black's Law Dictionary 300 (5th ed.1979)). To establish a cause of action for conversion under New York law, a plaintiff must show (1) "legal ownership or an immediate superior right of possession to a specific identifiable thing" and (2) that the defendant "exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Id.* (quoting *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 757, 365 N.Y.S.2d 44, 46 (2d Dep't 1975)).

The general rule is that a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal property. *See Ippolito v. Lennon*, 150 A.D.2d 300, 303, 542 N.Y.S.2d 3, 6 (1st Dep't 1989) ("New York does not generally recognize a cause of action for conversion of intangible property."); *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864, 521 N.Y.S.2d 917, 918 (4th Dep't 1987) (holding that conversion did not apply to musician's intangible property interest in concert performance). However, New York has extended the tort of conversion to intangible property rights that are "merged in, or identified with, some document" or "relate to specifically identifiable money." *See Iglesias v. U.S.*, 848 F.2d 362, 364 (2d Cir.1988) (noting that conversion does "include documents which embod[y] an intangible right, such as stock certificates and bonds") (internal citations omitted).

Here, Plaintiff fails to establish a viable conversion cause of action. Weinstein argues that, as the funds were exchanged for Cardis shares, those Cardis shares are the specifically identified property. However, as Plaintiff still retains possession of those shares, and instead argues that the shares are "worthless," she essentially

seeks the money she invested.  Weinstein has failed to allege that the amount she invested was segregated in a separate account or could otherwise be specifically identified, which is required to establish such a claim.  *See High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (dismissing conversion claim that was seeking the recovery of amount invested without identifying a separately segregated amount of money).  Accordingly, Plaintiff's conversion claim fails as a matter of law, and Defendants' motions to dismiss this cause of action should be granted.

### D. <u>Accounting</u>

Similarly, Weinstein's accounting cause of action is untenable.  To state a claim for an accounting under New York law, a plaintiff must allege:  (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009).  Corporate accounting may be sought only in a shareholder derivative action brought on behalf of a corporation. N.Y. Bus. Corp. Law § 720(b). An action for a corporate accounting brought by a shareholder in the shareholder's individual capacity fails to state a claim as a matter of law.  *Fisher v. Big Squeeze (N.Y.), Inc.*, 349 F. Supp. 2d 483, 488 (E.D.N.Y. 2004).  As Weinstein has failed to bring a shareholder derivative action, she has failed to adequately plead a claim for accounting, and the motions to dismiss this cause of action should be granted.

### E.  <u>Unjust Enrichment</u>

Plaintiff's unjust enrichment claim is duplicative of her fraud claims, and as a result, should be dismissed.  Unjust enrichment is available only in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. It is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732 (2012).  As Plaintiff's unjust enrichment claim is based on the same allegations, and seeks the same damages as her fraud claims, she has failed to allege the requisite circumstances to create an equitable obligation sufficient to support her claim.  Accordingly, she has failed to state a viable unjust enrichment cause of action, and Defendants' motions to dismiss this cause of action should be granted.

### F.  <u>Breach of Fiduciary Duty</u>

Weinstein's breach of fiduciary duty cause of action against the individual Defendants similarly fails.  To state a claim for breach of fiduciary duty under New York law, a plaintiff must plead "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in that breach; and damages." *SCS Commc'ns, Inc., v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004).  It is well settled that an employee of a corporation "owes a fiduciary duty only to the corporation" and not to investors in that corporation. *Bank of America Corp. v. Lemgruber*, 385 F.Supp.2d 200, 224 (S.D.N.Y. 2005).  Thus, "allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the

corporation only, for which a shareholder may sue derivatively but not individually."
*Abrams v. Donati*, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782 (1985).  Here, Weinstein
alleges that the individual Defendants, acting in their official capacity as "insider[s]
and high-ranking members of the Cardis executive team," committed a breach of
fiduciary duty.  *See* Plaintiff's Opp. to Cardis U.S.A. at 16.  Therefore, as employees
acting in their official capacity on behalf of the various corporate entities, the
Individual Defendants do not owe Plaintiff a fiduciary duty and the claim fails.
Accordingly, Defendants' motions to dismiss her breach of fiduciary duty cause of
action should be granted.

### G. Punitive Damages

Finally, Defendants move to dismiss Weinstein's claim for punitive damages.
*See* SAC ¶ 85; *see*, *e.g.*, Cardis U.S.A. Motion at 22.  While punitive damages are
unavailable for federal securities fraud claims, *see Boguslavsky v. Kaplan*, 159 F.3d
715, 721 (2d Cir. 1998), they may be awarded in connection with common law fraud
claims under New York law 'to punish a defendant for wanton and reckless or
malicious acts and to protect society against similar acts.'"  *In re Methyl Tertiary
Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 127 (2d Cir. 2013) (quoting *Rivera v.
City of New York*, 40 A.D.3d 334, 344, 836 N.Y.S.2d 108, 117 (1st Dep't 2007)).
Punitive damages are available in "limited circumstances" where a defendant has
engaged "in conduct that may be characterized as 'gross' and 'morally
reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference
to civil obligations.'"  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 382 F.
Supp. 2d 411, 421 n. 10 (S.D.N.Y. 2003) (quoting *New York Univ. v. Continental*

*Ins. Co.*, 87 N.Y.2d 308, 315-16, 639 N.Y.S.2d 283, 287 (1995)).

The appropriateness of punitive damages based upon these factors "is a question of fact for the jury." *Waltree Ltd. v. Ing Furman Selz LLC*, 97 F. Supp.2d 464, 470 (S.D.N.Y. 2000) (citing *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 643 N.Y.S.2d 33, 38 (1st Dep't 1996)). "A motion to dismiss a claim for punitive damages should be granted only if the plaintiff has 'failed to allege facts sufficient to demonstrate that the [defendants] engaged in conduct which rose to the high level of moral culpability necessary to support a claim for punitive damages.'" *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 287 (S.D.N.Y. 2014) (quoting *Fin. Servs. Vehicle Trust v. Saad*, 72 A.D.3d 1019, 1021, 900 N.Y.S.2d 353, 355 (2d Dep't 2010)). The SAC alleges that Fischman and Cardis N.V. / Cardis U.S.A. told Plaintiff blatant lies regarding Cardis N.V.'s technology and business prospects to defraud her out of her money, and then simply pocketed the investment proceeds rather than applying them toward any revenue-generating activities.  If ultimately proven, a jury could reasonably determine that this conduct falls into the category of "wanton and reckless or malicious acts" warranting punitive damages. Accordingly, Defendants' motions to dismiss the claim for punitive damages should be denied.

## IV.   CONCLUSION

Based on the foregoing, the Court respectfully recommends that:  (1) Defendant Brown's Motion to Dismiss be granted and all causes of action be dismissed as to him; (2) Defendant Cardis U.S.A.'s Motion to Dismiss be granted as to Katz and all causes

of action be dismissed as to him, but granted in part and denied in part so that the Second, Sixth, Seventh, Eighth, and Ninth Causes of Action are dismissed as to Cardis U.S.A., Choshen, and Fishman, and the First, Third, Fourth, and Fifth Causes of Action remain; and (3) Defendant Cardis NV's Motion to Dismiss be granted as to Tokayer and all causes of action be dismissed as against him, but granted in part and denied in part so that the Second, Sixth, Seventh, Eighth, and Ninth Causes of Action are dismissed as to Cardis N.V., but the First, Third, Four, and Fifth Causes of Action remain.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
      August 3, 2017                    /s/ Steven I. Locke
                                           STEVEN I. LOCKE
                                           United States Magistrate Judge